UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENNETH ZINK,

        Plaintiff,

v.                                  Case No. 3:18-cv-575-BJD-PDB

DR. LESLIE COLOMBANI and
DR. LARRY HENDERSON,

        Defendants.
_____

## ORDER

### I. Status

Plaintiff, Kenneth Zink, an inmate of the Florida Department of Corrections (FDOC), is proceeding pro se on a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1; Compl.) against two medical providers at Hamilton Correctional Institution (HCI): Dr. Leslie Colombani and Dr. Larry Henderson. Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. See Compl. at 5. Before the Court is Defendants' motion for summary judgment (Doc. 36; Motion), which Plaintiff opposes (Doc. 42; Pl. Resp.).

### II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. Id. Substantive law determines the materiality of facts, and

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." Hayes v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Complaint Allegations

In his complaint, which is verified under penalty of perjury,[1] Plaintiff asserts Defendants were deliberately indifferent to his serious medical needs.[2] See Compl. at 9. Plaintiff alleges he was transferred to the FDOC's custody in 2016 with serious medical issues dating back to 2006. Id. at 5, 7. Plaintiff says

---

[1] The factual assertions a plaintiff makes in a verified complaint satisfy "Rule 56's requirements for affidavits and sworn declarations" and are therefore given the same weight as factual statements made in an affidavit. Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014).

[2] Plaintiff also says Defendants violated his rights under Title II of the Americans with Disabilities Act (ADA). See Compl. at 5. Defendants do not address the ADA claim in their motion, nor did they address it in their motions to dismiss. See Order on Motions to Dismiss (Doc. 25). Regardless, this claim is not cognizable against Defendants in their individual capacities because "[o]nly public entities are liable for violations of Title II of the ADA." Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477, 478 (11th Cir. 2015) (holding the plaintiff failed to state a plausible ADA claim against prison employees in their individual capacities). In response to Defendants' motions to dismiss, Plaintiff clarified that he sues Defendants solely in their individual capacities. See Order on Motions to Dismiss (Doc. 25). If Plaintiff wants to pursue a claim under the ADA against the FDOC, he should initiate a new civil rights action.

3

he has been "in constant pain" following hip surgery because the "the screws holding the ball of the bone are scraping the socket." Id. at 7. He has trouble sleeping and uses a walker. At the time he filed his complaint, Plaintiff had been attempting to "receive proper medical care" for over a year. Id.

Among other things, Plaintiff alleges Dr. Colombani did not follow through on his promise to send Plaintiff to an orthopedist for pain management or a hip replacement and prescribed medications that Dr. Colombani knew proved ineffective or aggravated Plaintiff's stomach condition. Id. at 7-8. Plaintiff alleges Dr. Henderson acknowledged the chronic pain he was experiencing "but refuse[d] to prescribe proper pain medication and [told Plaintiff] it will be better tomorrow." Id. at 8.

## IV. Analysis & Conclusions

Defendants argue "there is no record evidence that Plaintiff was denied any medical treatment" and, therefore, he "cannot meet his burden of proof." See Motion at 6, 8. Defendants offer two exhibits (Docs. 36-1, 36-2; Def. Exs. A, B). First, they offer a ten-page exhibit that includes grievances, grievance responses, medical records (some of which are redundant), sick-call requests, an intake screening summary, and a letter Plaintiff sent to the Director of Health Services for the FDOC. See Def. Ex. A. Defendants do not explain how

4

these documents support their position and, upon review, they do not contradict Plaintiff's allegations.

As to the allegations against Dr. Colombani, Exhibit A contains a letter Plaintiff wrote to the Director of Health Services for the FDOC on February 26, 2018, complaining that Dr. Colombani still had not referred Plaintiff "to Lake Butler medical camp for a meeting with a doctor to discuss either the use of narcotics . . . or a hip replacement," which Dr. Colombani said he would do on August 28, 2017. See Def. Ex. A at 2. Dr. Colombani did order an x-ray for Plaintiff, which Plaintiff had on August 30, 2017. Id. at 5, 10. However, the records show Dr. Colombani took no other action, prompting Plaintiff to submit a grievance on September 9, 2017, and a sick-call request on February 16, 2018, complaining that he had not heard from Dr. Colombani since the August 28, 2017 evaluation, and he was still experiencing severe pain. Id. at 1, 4.

After Plaintiff submitted the sick-call request, he was seen in medical on February 19, 2018. Id. at 4. It is unclear whether Plaintiff was evaluated by Dr. Colombani or a nurse, but on February 21, 2018, Dr. Colombani ordered yet another x-ray, which Plaintiff had on February 28, 2018. Id. at 6. There is no indication Dr. Colombani reviewed the x-ray results or took any action to relieve Plaintiff's pain or follow through on the alleged commitment to send Plaintiff to Lake Butler for a consultation. Accepting Plaintiff's allegations as

true, such conduct could amount to deliberate indifference: "The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985).

Defendants state in their motion, "Plaintiff's own statements in this case show that Dr. Colombani referred the Plaintiff to a specialist for additional analysis and treatment." See Motion at 7. They cite no exhibit in support of this statement, and the Court finds no evidence that Dr. Colombani referred Plaintiff to a specialist. In fact, with his pretrial statement (Doc. 28), Plaintiff offers a "narrative" of his efforts to obtain medical care (Doc. 28-2; Pl. Ex. B). In that narrative, Plaintiff contends that between February 2018, and June 2018, he filed numerous sick-call requests because he still had not "seen a specialist." See Pl. Ex. B at 4-5. Additionally, when Plaintiff was transferred to Wakulla Correctional Institution some time in 2019, the nurse who conducted an initial medical evaluation and reviewed Plaintiff's medical records acknowledged Plaintiff's need to see an orthopedist, suggesting he had not yet been referred to one. Id. at 7.

Defendants offer Exhibit B purportedly to show that Plaintiff "was indeed taking and later provided numerous medications." See Motion at 7

6

(citing generally Exhibit B). As for the suggestion that Plaintiff was already taking medications, it appears Defendants are referring to the medications listed on an "Initial Intake Screening Summ[ary]" form dated August 31, 2016. See Def. Ex. A at 7. This form merely lists the medications Plaintiff said he had been taking when he came under the FDOC's custody in 2016. Id. Defendants provide no list of medications Dr. Colombani prescribed to address Plaintiff's complaints of hip pain during the relevant times (starting in about August 2017 and continuing until he was transferred to Wakulla).

As to medications "later provided," Dr. Colombani prescribed Protonix[3] for Plaintiff on June 28, 2019, almost two years after Dr. Colombani allegedly told Plaintiff he needed to see a specialist. See Def. Ex. B at 2. Despite Dr. Colombani's 2019 prescription for what appears to be a medication for acid reflux, Defendants offer no documentation showing Dr. Colombani's efforts to treat Plaintiff's complaints between August 2017—when Dr. Colombani allegedly recognized the need for other intervention—and 2019.

Defendants also provide a grievance response dated April 20, 2020, which indicates medical providers at Wakulla prescribed medications for Plaintiff. See Def. Ex. B at 3. This record appears wholly unrelated to Plaintiff's

---

[3] Protonix appears to be a medication for acid reflux or other stomach problems. See https://www.webmd.com (last visited February 26, 2021).

claim against Defendants for their alleged failure to provide constitutionally adequate medical care at HCI years before. On this record, the Court cannot conclude there is no support for Plaintiff's allegations against Dr. Colombani. While it is possible Dr. Colombani provided constitutionally adequate medical care while Plaintiff was in his care, it is also possible he did not. The records upon which Defendants rely offer very little insight into the nature of care Dr. Colombani provided Plaintiff in response to his complaints of hip pain. Notably, Dr. Colombani does not offer a declaration.

Finally, Plaintiff alleges Dr. Henderson treated him after the February 2018 x-ray was taken and "came to the same conclusion as [Dr.] Colombani." See Compl. at 8. According to Plaintiff, Dr. Henderson also recognized Plaintiff's chronic pain but refused to prescribe "proper pain medication"—which perhaps suggests a disagreement with medical care—and told Plaintiff his pain would get "better tomorrow"—which could suggest deliberate indifference to Plaintiff's chronic pain. Id. To the extent Dr. Henderson disputes these allegations, Defendants offer no documentation upon which the Court can conclude there is an absence of a genuine issue of material fact. Like Dr. Colombani, Dr. Henderson does not offer a declaration.

To discharge their burden on summary judgment, Defendants must "show[ ]—that is, point[ ] out to the district court—that there is an absence of

evidence to support the nonmoving party's case." United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala., 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting with alteration Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Upon review, no documentation Defendants offer shows an absence of evidence to support Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs. Accepting Plaintiff's allegations as true and considering the evidence, Defendants fail to carry their burden on summary judgment.

Accordingly, it is now

**ORDERED:**

1. Defendants' motion for summary judgment (Doc. 36) is **DENIED**.

2. This case is in a posture to proceed to settlement conference and, if settlement negotiations fail, to trial. Accordingly, this case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of March 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Kenneth Zink
Counsel of Record